UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

B.T.,

      Plaintiff,

v.                                    Case No.:

Simone Marstiller, in her official
capacity as Secretary of the Florida
Agency for Health Care Administration,

      Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I.   PRELIMINARY STATEMENT

1.    Plaintiff B.T. is a nine-year-old child enrolled in Florida's Medicaid program. She is diagnosed with autism spectrum disorder and her symptoms include profound language and communication delays. B.T. has a core vocabulary of only 30 words, and she is working to master use of simple two-word commands. She has never been able to establish meaningful relationships with peers. Her inability to express herself frustrates her and causes anxiety which leads her to engage in maladaptive behaviors, including self-injury.

2.    In June 2021, Defendant authorized B.T. to receive 60 minutes of speech therapy, three times per week, for a six-month period. With these services,

B.T. was maintaining her speech abilities and working on the two-word commands. Eight months later, Defendant cut B.T.'s coverage in half even though her condition and circumstances had not improved. Defendant did not provide B.T. with written notice of the right to appeal this decision.

3.     B.T. is enrolled in a managed care organization (MCO) that contracts with Defendants. B.T.'s MCO (along with others that have contracted with Defendant) subcontract with an entity known as Health Network One (HN1) to administer pediatric speech therapy services.

4.     HN1 reviews prior authorization requests from providers, which include the provider's prescription for a specific amount and duration (or, time and frequency) of the service, for example, 60 minutes two times per week. HN1 then assigns an "impairment level" to the child and this, in turn, corresponds to an expenditure cap on the amount that HN1 will pay. There are no exceptions to HN1's determination of the impairment level or the payment amount. These are locked in, even if the child needs additional services to address her or his individual condition.

5.     Unless HN1 denies a prior authorization request outright, neither it nor the MCO provides the child's family written notice and the right to appeal the decision.

6.      HN1's approach to prior authorization differs from that used by other Medicaid-participating MCOs and differs from that applied to individuals not enrolled in an MCO, *i.e.,* those in fee-for-service Medicaid. In those instances, the amount of services requested are denied in full, approved in full, or approved for a quantity less than prescribed by the treating provider. If prior authorization is denied or approved for less than the amount requested, a written notice informing the beneficiary of their appeal rights must be sent. This is hereafter referred to as the "non-HN1 model."

7.      Defendant has concluded that: "[u]nder this [HN1] model the Managed Care Plan cannot ensure EPSDT is upheld due to the inability to ensure the therapy services ordered by a physician are rendered in the amount, duration and scope determined to be medically necessary." And while subsequent investigations have found no improvement in the HN1 Model, Defendant continues to allow MCOs to administer speech therapy through the Model. Defendant's most recent review shows that the HN1 Model results in children receiving approximately 70% less treatment than those children whose speech therapy needs are determined using the non-HN1 model.

8.      By allowing MCOs to rely on the HN1 Model which caps care, Defendant violates the federal Medicaid Act's requirements that the State Medicaid agency "arrange for...treatment" that is necessary to "correct or

3

ameliorate" the individual child's condition. 42 U.S.C. §§ 1396a(a)(43)(C), 1396d(r)(5).

9.      Defendant also violates provisions of the Fourteenth Amendment to the United States Constitution and provisions of the Medicaid Act, 42 U.S.C. 1396a(a)(3), which mandate that beneficiaries receive written notice and be provided an opportunity for a fair hearing when any amount of a request service is denied, reduced, or terminated.

10.     B.T. therefore brings this action to obtain declaratory and injunctive relief to ensure that Defendant does not rely on the HN1 Model in authorizing her speech therapy services in a manner that violates the Medicaid Act and the U.S Constitution.

## II. JURISDICTION

11.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, which provides for original jurisdiction over all civil suits involving questions of federal law, and 28 U.S.C. §§ 1343(3) and (4), which grant this Court original jurisdiction in all actions authorized by 42 U.S.C. § 1983 to redress the deprivation under color of State law of any rights, privileges, or immunities guaranteed by the U.S. Constitution and Acts of Congress.

12.     At all times relevant to this action, Defendant has acted under the color of state law.

13.    The Court is authorized to award Plaintiff's requested declaratory, injunctive, and other appropriate relief, pursuant to 28 U.S.C. §§ 2201 and 2202; Fed. R. Civ. P. 57 and 65; and 42 U.S.C. § 1983.

14.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Northern District of Florida – Tallahassee Division because Defendant officially resides there and, additionally, a substantial part of the events or omissions giving rise to the claim occurred in the district and division.

### III. PARTIES

15.    Plaintiff, B.T., is a nine-year-old child enrolled in Florida's Medicaid program. She resides in Hernando County, Florida with her mother and Next Friend, Robin T.

16.    Defendant Marstiller is sued in her official capacity as the Secretary of the Florida Agency for Health Care Administration (AHCA).

17.    Secretary Marstiller directs and oversees all agency programs, including administration of Florida's Medicaid program. Fla. Stat. §§ 20.42(3), 409.902(1). Defendant Marstiller is based, and her Agency is headquartered, in Tallahassee, Leon County, Florida.

### IV. FRAMEWORK OF FEDERAL MEDICAID LAW

**A.    The Medicaid Act**

18.     The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-6, establishes a medical assistance program cooperatively funded by the federal and state governments.

19.     Medicaid is designed to "enabl[e] each State, as far as practicable...to furnish (1) medical assistance on behalf of families with dependent children and aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence and self-care...." 42 U.S.C. § 1396-1.

20.     States are required to administer Medicaid in "the best interests of recipients." 42 U.S.C. § 1396a(a)(19).

21.     The Centers for Medicare & Medicaid Services (CMS) of the United States' Department of Health and Human Services is the agency that administers Medicaid at the federal level, including publishing regulations and guidelines. The regulations are set forth in 42 C.F.R. §§ 430.0-483.480 and guidance is contained in the CMS State Medicaid Manual, among other publications. The regulations and guidance are binding on all states that participate in Medicaid.

22.     A state's participation in Medicaid is voluntary. Once a state elects to participate, it must adhere to the federal legal requirements as provided by the United States Constitution, the Medicaid Act, and the rules promulgated by CMS.

23.     States that participate in the Medicaid program must designate a single state agency to administer or supervise the administration of the Medicaid program and ensure the program complies with all relevant laws and regulations. 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10.

24.     The single state agency cannot delegate ultimate responsibility for its obligations under the federal Medicaid Act. *See* 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10.

**B.     The Medicaid Act's EPSDT Requirements**

25.     Federal law requires states participating in Medicaid to cover select mandatory services. One mandatory service is EPSDT, to which all Medicaid-enrolled children under age 21 are entitled. 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(4)(B), 1396d(r).

26.     EPSDT includes screening for eligible children to determine the "existence of...physical or mental illnesses or conditions." 42 U.S.C. §§ 1396a(a)(43)(B), 1396d(r)(1).

27.     EPSDT requires that any of the services listed under § 1396d(a) must be provided if they are "necessary health care, diagnostic services, treatment and other measures…to correct or ameliorate defects and physical and mental illnesses and conditions, discovered by the screening services, whether or not such services are covered" for adults. 42 U.S.C. § 1396d(r)(5).

28.    EPSDT requires that states "arrang[e] for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed" by EPSDT screening. 42 U.S.C. § 1396a(a)(43)(C).

29.    "Physical therapy and related services" are listed in § 1396d(a). 42 U.S.C. § 1396d(a)(11); 42 C.F.R. § 440.110(c) (covering "services for individuals with speech, hearing, and language disorders").

30.    Accordingly, under EPSDT, states must cover all speech therapy necessary to ameliorate, correct, or maintain a child's condition. 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(C); 1396d(a)(4)(B), 1396d(r)(5);1396d(a)(11).

31.     Defendant must "design and employ methods to ensure that children receive…treatment for all conditions identified as a result of examination or diagnosis." CMS, State Medicaid Manual § 5310.

32.    Defendant must "make available a variety of individual and group providers qualified and willing to provide EPSDT services." 42 C.F.R. § 441.61(b).

33.    A state must cover a Medicaid service under EPSDT if it corrects, compensates for, improves a condition, or prevents a condition from worsening— even if the condition cannot be prevented or cured. U.S. Dep't of Health & Human Servs., CMS, EPSDT: A Guide for States: Coverage in the Medicaid Benefit for Children and Adolescents at 10 (June 2014) (CMS, EPSDT Guide);

8

https://www.hhs.gov/guidance/document/epsdt-guide-states-coverage-medicaid-benefit-children-and-adolescents.

34.    States may require prior authorization – a process by which the state decides whether a requested Medicaid service is medically necessary – before it agrees to reimburse the service, including a service covered under EPSDT. 42 C.F.R. § 440.230(d).

35.    When evaluating whether to authorize an EPSDT service as medically necessary, Defendant's inquiry must be individualized, accounting for a particular child's needs. 42 U.S.C. § 1396d(r)(5); CMS, EPSDT Guide, at 23.

36.    Since "determinations of medical necessity must be individualized, flat or hard limits based on a monetary cap or budgetary constraints are not consistent with EPSDT." CMS, EPSDT Guide, at 23.

**C.    Administration of State Medicaid Programs through Managed Care**

37.    States may contract with private entities, such as MCOs, to administer aspects of their Medicaid programs. 42 U.S.C. § 1396n(b).

38.    With a few exceptions, states can require Medicaid beneficiaries to enroll in an MCO. However, a beneficiary has the right to select an MCO of his or her choice. 42 C.F.R. § 438.52.

39.    Typically, once selection is made, the beneficiary remains in that MCO through a closed enrollment period. 42 C.F.R. § 438.56(c). A beneficiary

may switch from one MCO to another during their closed enrollment period "for cause" which is defined by the state. 42 C.F.R. § 438.56(c)(1).

40.     Generally, if a Medicaid beneficiary changes from one MCO to another, the beneficiary is entitled to a "continuity of care" period in which their services, including previously authorized services, are not terminated, or reduced for a set period of time. 42 C.F.R. § 438.62.

41.     MCOs administer a package of Medicaid services in exchange for a preset per member per month payment from the state, often called a capitation payment. 42 U.S.C. § 1396u-2(b); 42 C.F.R. § 438.6; CMS, State Medicaid Manual § 2089.

42.     Each MCO must maintain an adequate network of providers to administer these services. 42 C.F.R. §§ 438.207(a) & (b)

43.     With some exceptions, a Medicaid beneficiary must receive services from a provider in network with her or his MCO. 42 C.F.R. § 438.52.

44.     MCOs undertake prior authorization reviews of covered Medicaid services and pay providers for those services when approved.

45.     In undertaking a prior authorization review of a requested Medicaid service, an MCO may not use a standard that is more restrictive than what is used in the state Medicaid program as indicated in state law, policies, and procedures. 42 C.F.R. § 438.210(a)(5).

46.    When an MCO does not authorize the full requested amount of a

Medicaid service, the MCO must provide written notice of the decision with an

opportunity to appeal. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 438.210(c).

## V. FACTS REGARDING FLORIDA'S MEDICAID PROGRAM

### A.    Florida's Statewide Medicaid Managed Care Program

47.    Florida elects to participate in the federal Medicaid program. Fla. Stat.

§§ 409.901-.9205

48.    AHCA is designated as Florida's single state agency and is

responsible for the state's Medicaid program. Fla. Stat. § 409.902(1).

49.    Florida law mandates that most Florida Medicaid beneficiaries,

including children, receive their health care through an MCO. Fla. Stat. §§ 409.965

& 409.972.

50.    Those beneficiaries whose Medicaid is not administered through an

MCO, either because they were allowed to opt out or because Florida does not

allow them to participate in managed care, are referred to as beneficiaries enrolled

in "fee-for-service." Fee-for-service Medicaid services are authorized through

Quality Improvement Organizations (QIOs) which are entities designated through

CMS to perform utilization review services and to monitor the appropriateness of

care provided to individuals through a state Medicaid program. *See* Fla. Admin.

Code. R. 59G-1.010. The rate Defendant pays to fee-for-service Medicaid providers for their services is set by the state. *See* Fla. Admin. Code R. 59G-4.002.

51.     In addition to federal and state law, the obligations of Florida MCOs are set forth in their contracts with Defendant. The individual MCO contracts are not publicly available, but Defendant publishes a "Model Contract" on its website at:  https://ahca.myflorida.com/medicaid/statewide_mc/model_health_FY18-23.shtml (AHCA Model Contract).

52.     All contracts between the MCO and Defendant must contain the Model Contract provisions. AHCA Model Contract, Attachment II (Core Contract Provisions), at 35.

53.     Defendant's Model Contract states that an MCO "shall not place any time caps (e.g., hourly limits, daily limits, or annual limits) or *expenditure caps* on services for children under the age of twenty-one (21) years." AHCA Model Contract, Attachment II (Core Contract Provisions), at 65. (Emphasis added).

54.     Defendant's Model Contract requires that Florida MCOs maintain a regional provider ratio of 1:1500 beneficiaries for pediatric speech therapy. AHCA Model Contract, Attachment II, Exhibit II-A (Managed Medical Assistance Program), at 48.

55.     There are ten Medicaid MCOs currently operating in Florida. *See* https://ahca.myflorida.com/medicaid/statewide_mc/pdf/mma/SMMC_Plans_by_Region.pdf. Sunshine Health (Sunshine) is an MCO currently operating in Florida.

56.     Some Florida MCOs administer more than one managed care plan.

58.     Sunshine administers three separate managed care plans.

57.     One plan, called "Sunshine Health," can be chosen by any Medicaid beneficiary.

58.     Sunshine also administers two specialty Medicaid plans including the Children's Medical Services Plan.

59.     To participate in the Children's Medical Services Plan, a child must be screened by the Florida Department of Health (DOH) to determine whether the child has a "chronic and serious physical, developmental, behavioral, or emotional condition…who require[s] health care and related services of a type or amount beyond that which is generally required by children." *See* Fla. Stat. 391.021(2). If DOH determines the child has special healthcare needs, then the child is allowed to enroll in the plan. *See* Fla. Admin. Code 64C-2.002.

**B.    The Different Approaches to Prior Authorization of Speech Therapy for Medicaid Enrolled Children**

    i.    Administration and prior authorization of speech therapy under the non-HN1 Model

60.    In Florida's Medicaid managed care program, providers generally contract with an MCO and become part of the MCO's network of providers.

61.    The MCO and the provider agree to a rate of reimbursement. On information and belief, the standard negotiated rate of reimbursement for speech therapy is the Florida Medicaid fee-for-service rate of $71.44/hour (or, $17.86 per quarter hour). *See* Fla. Admin. Code R. 59G-4.002.

62.    In the non-HN1 Model used by some MCOs and in fee-for-service Medicaid, before rendering a service, the provider submits to the MCO or QIO (if fee-for-service) a request for authorization of a specific amount of speech therapy units. The amount is requested as: frequency (how many visits per week, *e.g.*, therapy occurs 3 times each week); duration (how long each visit lasts, *e.g.*, 1 total hour or 4 quarter hours of care per each visit); and period of care (how long an episode of care will last, *e.g.*, 26 weeks). This produces a total amount of units requested for the period of care (frequency multiplied by the duration multiplied by the period of care which equals the total amount of units requested, *e.g.*, 3 visits per week for 4 quarters hours per visit for 26 weeks equals 312 units).

63.    The MCO or QIO reviews the request and determines whether the total amount of units of prescribed speech therapy is medically necessary.

64.    If the MCO or QIO agrees with the provider that the total amount of units of speech therapy prescribed is medically necessary, it authorizes the provider to render care and receive reimbursement.

65.    If the MCO or QIO disagrees with the provider's requested units, it denies the amount of units either in whole (if the MCO or QIO decides no therapy is necessary) or in part (if the MCO or QIO decides that some but not all the requested therapy is necessary).

66.    When the MCO or QIO denies any amount of therapy, either in whole or in part, the MCO or QIO is required to send a written notice to the child Medicaid beneficiary which sets forth the right to appeal in accordance with federal Medicaid law. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 438.210(c).

    ii.    <u>Administration and prior authorization under the HN1 Model for speech therapy</u>

67.    Health Network One or HN1 is a for-profit entity that operates Therapy Network of Florida (formerly known as American Therapy Administrators of Florida or ATA).

68.    Several Florida Medicaid MCOs subcontract with HN1 to administer speech therapy to MCO enrollees under age 21.

69.    Some children enrolled in MCOs that subcontract with HN1 are excluded or "carved out" of the HN1 Model. Their service requests continue to be reviewed and authorized directly by their MCO under a non-HN1 Model. Those

children are enrolled in Sunshine's Children's Medical Services Plan, aged 0-3

years old, receiving Prescribed Pediatric Extended Care (medical daycare)

services, receiving therapy at an outpatient hospital setting, or children for whom

Medicaid is their secondary insurance.

70.    For MCOs that subcontract with HN1, the role of HN1 is to review

requests for prior authorization of outpatient speech therapy for beneficiaries under

age 21, to contract directly with therapists for the provision of speech therapy

services to MCO enrollees, and to reimburse contracting therapists for that care.

71.    In contrast to the non-HN1 prior authorization process, the HN1

Model does not approve coverage based on the amount of speech therapy the

health care provider prescribed.

72.    Instead of authorizing a specific frequency and duration of therapy,

under the HN1 Model, the therapists that contract with HN1 administer a

standardized test to evaluate the child's condition. HN1 then uses that standardized

test score to assign the child an impairment level, as shown on the chart below.

| Test Name | Abbr. | Test Score Type | **Level 5** | **Level 4** | **Level 3** | **Level 2** | **Level 1** |
|---|---|---|---|---|---|---|---|
| Level of Impairment | | | Profound | Severe | Moderate | Mild | WNL |
| Goldman Fristoe Test of Articulation | GFTA-2 GTTA-3 | Std Score Std Score | ≤64 ≤64 | 65-70 65-70 | 71-77 71-77 | 78-84 78-84 | 85-100 85-100 |

| Preschool Language Scale English/Spanish | PLS4-E/S PLS5-E/S | Std Score Std Score | ≤64 ≤64 | 65-70 65-70 | 71-77 71-77 | 78-84 78-84 | 85-100 85-100 |
|---|---|---|---|---|---|---|---|
| Clinical Assessment of Articulation and Phonology | CAAP CAAP2 | Std Score Std Score | ≤64 ≤64 | 65-70 65-70 | 71-77 71-77 | 78-84 78-84 | 85-100 85-100 |
| Test of Auditory Processing Skills – 3rd Ed. | TAPS3 | Std Score Percentile | ≤60 ≤0.4 | 60-69 0.4-1.9 | 70-79 2-8 | 80-89 9-24 | 90-110 25-75 |

73.    Under the HN1 Model, impairment levels range from 1 to 5, with 5 being the highest level and Level 1 paying for the evaluation only.

74.    Under the HN1 Model, HN1 assigns the impairment level and a corresponding capped payment for a total of 180 days or six-months except for Level 1, which is reimbursement for an evaluation only. The impairment level corresponds to a case payment rate ("case rate") to the provider.

75.    The episode of care payment associated with the assigned level of impairment for six months is as follows:

| Level 1 | $72 (evaluation only) |
|---|---|
| Level 2 | $540 |
| Level 3 | $1080 |
| Level 4 | $1260 |
| Level 5 | $1800 |

76.    Below is a chart that shows the maximum reimbursement amounts for children whose speech therapy is authorized and reimbursed under the HN1 model

77.    For a child assigned the highest impairment level, the therapist payment is capped at $1800.00 for all speech therapy rendered during the six-month authorization period.

| Model | Frequency | 180 Day Episode of Care | | | | Total |
|---|---|---|---|---|---|---|
| | | Period 1 (60 days) | Period 2 (60 days) | Period 3 (60 days) | | |
| Case Rate | Level 1 | $72.00 | $0.00 | $0.00 | = | $72.00 |
| FFS | Eval Only* | $51.05 | $0.00 | $0.00 | = | $51.05 |
| | | | | | | |
| Case Rate | Level 2 | $180.00 | $180.00 | $180.00 | = | $540.00 |
| FFS | 1 (30 min) visit per week* | $285.76 | $285.76 | $285.76 | = | $857.28 |
| FFS | 1 (30 min) visit w/Assistant per week* | $228.80 | $228.80 | $228.80 | = | $686.40 |
| | | | | | | |
| Case Rate | Level 3 | $360.00 | $360.00 | $360.00 | = | $1,080.00 |
| FFS | 2 (30 min) visit per week* | $571.52 | $571.52 | $571.52 | = | $1,714.56 |
| FFS | 2 (30 min) visit w/Assistant per week* | $457.60 | $457.60 | $457.60 | = | $1,372.80 |
| | | | | | | |
| Case Rate | Level 4 | $420.00 | $420.00 | $420.00 | = | $1,260.00 |
| FFS | 2 (1 hr) visit per week* | $1,143.04 | $1,143.04 | $1,143.04 | = | $3,429.12 |
| FFS | 2 (1 hr) visit w/Assistant per week* | $915.20 | $915.20 | $915.20 | = | $2,745.60 |
| | | | | | | |
| Case Rate | Level 5 | $600.00 | $600.00 | $600.00 | = | $1,800.00 |
| FFS | 3 (1 hr) visit per week* | $1,714.56 | $1,714.56 | $1,714.56 | = | $5,143.68 |
| FFS | 3 (1 hr) visit w/Assistant per week* | $1,372.80 | $1,372.80 | $1,372.80 | = | $4,118.40 |

*Assumes 100% reimbursement of FL Medicaid Fee Schedule and no absences.

78.    There are no exceptions that allow for a waiver of the cap so the child can access additional therapy during that six-month period if medically indicated.

79.    Where an impairment level and associated case rate cover less than the total amount of speech therapy prescribed by the provider, as in B.T.'s case, HN1 does not issue a written notice of denial or reduction including information on the right to appeal.

80.    On information and belief, a written notice of denial or termination to the child Medicaid beneficiary is only provided when HN1 denies coverage of speech therapy altogether.

**C.    Defendant's Knowledge and Approval of the HN1 Model and its Impact on Medicaid-Enrolled Children**

81.    Defendant knows that the HN1 Model is causing children's rights under EPSDT to be violated.

82.    In January 2015, Defendant issued a corrective action plan against three major MCOs due to their use of HN1. In the corrective action plan, Defendant found that HN1:

> uses a model in which a case rate is assigned through an administrative authorization process…[t]he case rate serves as a lump sum payment to the therapist for an enrollee's therapy services after an initial nine (9) visits are used on a fee-for-service (FFS) basis. Per HN1, they do not dictate the time/units per visit but expect that their contracted therapists will provide the highest and most appropriate quality of service(s) required for each unique patient. *Under this model the Managed Care Plan cannot ensure EPSDT is upheld due to the inability to ensure the therapy services ordered by a physician are rendered in the amount, duration and scope determined to be medically necessary.*

(emphasis added).

83.    Defendant further found that, under HN1's model, "[t]he Managed Care Plan cannot ensure continuity of care or notice provisions are upheld due to the inability to equate previous FFS visits to visits under the HN1 model."

19

84.    The HN1 Model in use today is identical in all relevant respects to that described in Defendant's January 2015 corrective action plan.

85.    Notwithstanding Defendant's findings, Defendant continue to approve use of the HN1 Model. In a letter dated May 25, 2018, from Sunshine to the Florida Association of Speech-Language Pathologists & Audiologists, Sunshine states that Defendant reviewed and approved HN1's Model for implementation on June 1, 2018.

86.    In August 2019, Defendant conducted a Pediatric Therapy Compliance Review to determine whether MCOs had an adequate number of pediatric therapy providers in their networks.

87.    Defendant allowed MCOs to self-report whether they met the required speech therapist regional ratio standard of 1:1500 set by Defendant.

88.    At the culmination of the 2019 Pediatric Therapy Compliance Review, in May 2020, Defendant found violations by the MCOs using HN1 that were serious enough to result in average liquidated damage fines of $38,600 for each of the MCOs fined. And while MCOs that did not use the HN1 model were also found to have network adequacy violations, the fines for their violations were *de minimus* by comparison, *i.e.*, 96% less than the fines against MCOs that used HN1.

89.     From February to May 2021, Defendant conducted a third review after undersigned counsel sent a letter laying out concerns about the HN1 Model and its impact on access to pediatric therapies under Medicaid.

90.     Data collected by Defendant during this third review period and provided to undersigned counsel showed that children who were prescribed speech therapy, and whose MCOs did not use the HN1 Model, received 74% more care than that provided to HN1 plan beneficiaries.

91.     Additionally, data collected by AHCA during the 2021 review period showed that MCOs who rely on the HN1 Model only issued notices of denial to children whose therapy was denied entirely. Data showed that HN1 did not provide children beneficiaries written notice when their assigned impairment level covered part of, but not all, medically necessary care.

92.     During the 2021 review period, Defendant also reviewed whether it could approve Sunshine's proposed subcontract with HN1 for those enrollees it would acquire due to an upcoming merger with another Florida MCO, WellCare.

93.     One element required for Defendant's approval of an MCO contract where the subcontract includes coverage of Medicaid services is whether, based on a report called the "Provider Network Verification" file or "PNV," the MCO can report that its subcontractor has met network adequacy requirements. AHCA Model Contract, Attachment II (Core Contract Provisions), at 137-38.

94.    Throughout the relevant review period, May to July 2021, HN1 did not meet network adequacy in several Medicaid regions for purposes of Defendant approving Sunshine's contract with HN1.

95.    Despite this evidence, at the end of the 2021 review period, Defendant approved Sunshine's request to apply the HN1 Model to child enrollees it acquired due to its merger with WellCare.

## VI.    FACTS AND ALLEGATIONS OF PLAINTIFF, B.T.

96.    Plaintiff, B.T., is a nine-year-old Medicaid beneficiary enrolled in Sunshine Health.

97.    B.T.'s mother and legal guardian is Robin T. B.T. resides with her mother, father, and three sisters in Hernando County, Florida.

98.    At two years old, B.T. was diagnosed with autism spectrum disorder.

99.    As a result of her autism diagnosis, she has difficulty with social interaction, communication, and displays restricted and repetitive behavior.

100.   Her speech language delays include significant sensory processing issues (a condition that affects how a person processes environmental stimuli), severe cognitive-linguistic deficits (difficulty with attention, visual and auditory perceptions, memory, and reasoning and problem-solving), severe pragmatic language skills (limits in the social language skills used in daily interactions with

others), and a lack of functional articulation skills (the ability to communicate one's feelings and basic needs effectively).

101.   Due to these delays, B.T. lacks effective ways to communicate which leads her to become frustrated, anxious, and aggressive. During these times, she exhibits combative behaviors, including self-injurious behavior like biting herself.

102.   B.T. has significant difficulty with feeding due to oral aversions stemming from her sensory processing disorder. As a result, the only solid food she consumes is formula mixed with applesauce.

103.   B.T.'s current provider of speech therapy services is TherHappy Therapy Services in Hudson, Florida.

104.   From 2015 to late 2021, B.T. was enrolled in Staywell, a health plan administered by the Florida MCO, WellCare.

105.   On June 9, 2015, and repeatedly thereafter, Defendant, through WellCare, authorized speech therapy for B.T.in the amount of 60 minutes, three times per week.

106.   In October 2021, WellCare merged with Sunshine and all Staywell enrollees, including B.T., were transitioned to Sunshine. Sunshine uses the HN1 Model.

107.   After the merger, the continuity of care period protected the level of speech therapy WellCare authorized for B.T. for 60 days.

108.    During B.T.'s continuity of care period, from November 29, 2021 to January 31, 2022, Sunshine authorized speech therapy for B.T. in the amount of 60 minutes, three times per week, as prescribed by B.T.'s provider.

109.    On February 1, 2022, B.T. became subject to the HN1 Model which is used by Sunshine.

110.    HN1 assigned B.T. a Level 5 impairment.

111.    HN1's Level 5 assignment capped B.T.'s therapy at $1800.00 for a six-month authorization period.

112.    HN1's assignment of B.T. to a Level 5 means that B.T.'s speech therapy provider is reimbursed $25.00 per visit for providing therapy to B.T. for 60 minutes, three times per week. This is $46.00 less than what the provider received for treating B.T. prior to application of the HN1 Model.

113.    Accordingly, B.T.'s provider reduced the number of speech therapy visits from 60 minutes, three times per week, to 30 minutes, three times per week.

114.    When HN1 capped payment to the provider at $1800.00 per month for the six-month authorization period, neither HN1 nor Sunshine provided B.T. written notice of reduction in services or an opportunity to contest HN1's decision.

115.    Pursuant to the HN1 Model, B.T. is being denied treatment necessary to correct or ameliorate her disabling conditions.

## VII. CAUSES OF ACTION

24

**First Cause of Action: Violation of the Federal Medicaid Early and Periodic Screening, Diagnostic, and Treatment Mandate**

116.   Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 115 set forth previously.

117.   Defendant, acting under color of law, violates the EPSDT provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(C), 1396d(a)(4)(B), and 1396d(r)(5), by failing to provide or arrange for Plaintiff to receive speech therapy necessary to correct or ameliorate her conditions.

118.   Defendant Marstiller's violations have been repeated and knowing and entitles Plaintiff to relief under 42 U.S.C. § 1983.

**Second Cause of Action: Violation of Federal Medicaid Act Notice and a Hearing**

119.   Plaintiff re-alleges and incorporates herein by reference every allegation and paragraph 1 through 115 set forth previously.

120.   Defendant Marstiller, acting under the color of state law, violates the Medicaid Act, 42 U.S.C. § 1396a(a)(3), by failing to provide Plaintiff with adequate and timely written notice of Defendant's decision to deny, reduce, or terminate speech therapy services.

121.   Defendant Marstiller's violations have been repeated and knowing and entitles Plaintiff to relief under 42 U.S.C. § 1983.

**Third Cause of Action:  Violation of Constitutional Due Process**

122.   Plaintiff re-alleges and incorporate herein by reference every allegation and paragraph 1 through 115 set forth previously.

123.   Defendant Marstiller, acting under the color of state law, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to provide Plaintiff with adequate and timely written notice of Defendant's decision to deny, reduce, or terminate speech therapy services.

124.   Defendant Marstiller's violations have been repeated and knowing and entitles Plaintiff to relief under 42 U.S.C. § 1983.

## VIII. REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 that Defendant's use of the HN1 Model to authorize and reimburse speech therapy services for Medicaid enrolled children violates the EPSDT provisions of the federal Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B), 1396a(a)(43)(C), and 1396d(r)(5), as well as violates Due Process provisions contained in 42 U.S.C. § 1396a(a)(3) and the Fourteenth Amendment to the United States Constitution;

B. Grant a permanent injunction requiring the Defendant, her agents, successors, and employees to comply with the requirements of the Medicaid Act by providing Plaintiff with all speech therapy necessary to correct or

ameliorate her disabling conditions and cease relying on the HN1 Model to

authorize speech therapy;

C.  Retain jurisdiction over this action to ensure Defendant's compliance with

the mandates of the Court's Orders;

D.  Award to the Plaintiff costs and reasonable attorney fees pursuant to 42

U.S.C. § 1988; and

E.  Order such other relief as this Court deems just and equitable.

Respectfully submitted this 3rd day of June 2022.

Plaintiff by her Attorneys,

*/s/ Katy DeBriere*
Katherine DeBriere

Fla. Bar No.: 58506
Florida Health Justice Project
3900 Richmond Street
Jacksonville, FL 32205
Telephone: (352) 278-6059
debriere@floridahealthjustice.org

Sarah Somers*
NC Bar No.: 33165
National Health Law Program
North Carolina Office
1512 E. Franklin St., Ste. 110
Chapel Hill, NC 27514
Telephone: (919) 968-6308
somers@healthlaw.org

*Attorney is appearing provisionally subject to approval to appear pro hac vice.

27