UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

B.T., by and through her Next Friend,
Robin T. ; and A.G., by and through
his Next Friend, Susel, S.

     Plaintiffs,

v.                              CASE NO.: 4:22-cv-212-MW-MJF

SIMONE MARSTILLER, in her official
capacity as Secretary for the FLORIDA
AGENCY FOR HEALTH CARE
ADMINISTRATION,

     Defendant.

_____/

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Simone Marstiller, in her official capacity as Secretary for the Florida Agency for Health Care Administration ("AHCA"), by and through her undersigned counsel, files this Answer and Defenses to the First Amended Complaint, (ECF No. 10), and responds to each paragraph of that Complaint as follows:

## I.    PRELIMINARY STATEMENT

1.    Admitted that B.T. is enrolled in Florida's Medicaid program. Otherwise without knowledge and therefore denied.

2.    Denied that AHCA has authorized, or refused to authorize, any specific

1

outlay of services for B.T.  B.T. is enrolled in the Statewide Medicaid Managed Care (the "SMMC") component of Florida's Medicaid program, and service determinations are made through managed care organizations ("MCOs") that contract with AHCA. Without knowledge as to B.T.'s specific condition now or in the past. Otherwise denied.

3.     Admitted that A.G. is enrolled in Florida's Medicaid program. Otherwise without knowledge and therefore denied.

4.     Denied that AHCA has authorized, or refused to authorize, any specific outlay of services for A.G. A.G. is enrolled in the SMMC component of Florida's Medicaid program, and service determinations are made through MCOs that contract with AHCA. Otherwise denied.

5.     Admitted that B.T. and A.G. are enrolled in plans offered by MCOs that contract with AHCA. Admitted that Sunshine and Simply contract with Health Network One, Inc. ("Health Network One") to assist the plans in administering pediatric speech therapy services. Admitted that other MCOs contract with Health Network One for assistance in administering pediatric speech therapy services. Otherwise denied.

6.     Admitted that HN1 Therapy Network of Florida, LLC ("HN1") reviews prior authorization requests from providers, which include, among other things, a plan of care that includes the provider's prescription for a specific amount and

duration of the service. Admitted that HN1 assigns an "impairment level" to the recipient that corresponds to a level of payment for services provided to the recipient, in accordance with the agreed upon terms contained in agreements between Health Network One and contracting providers. Denied that there are no exceptions to HN1's determination of the impairment level or the payment amount. Denied that impairment levels or payment amounts "are locked in, even if the child needs additional services to address her or his individual condition." Otherwise denied.

7.      The allegations of paragraph 7 rely on the false premise that HN1 approves or denies prior authorization requests. HN1 does not approve or deny prior authorization requests. Health Network One contracts with a network of providers that have contractually agreed to provide medically necessary pediatric speech therapy services under the terms provided in their respective provider agreements with Health Network One. To the extent a response is otherwise required to the allegations of paragraph 7, the allegations are denied.

8.      The allegations of paragraph 8 rely on the false premise that HN1 approves or denies prior authorization requests. HN1 does not approve or deny prior authorization requests. Health Network One contracts with a network of providers that have contractually agreed to provide all medically necessary pediatric speech therapy services under the terms provided in their respective provider agreements. The allegations of paragraph 8 also rely on the false premise that all providers that

provide pediatric speech therapy services to Medicaid recipients are monolithically paid in the same fee-for-service manner, such that a "non-HN1 model" exists as a valid grouping. Upon information and belief, some providers of pediatric speech therapy services are compensated on a fee-for-service basis while others may be compensated in other ways, such as an agreed-upon case rate basis. Otherwise, to the extent a response is required to the allegations of paragraph 8, the allegations are denied.

9. The documents quoted and paraphrased in paragraph 9 speak for themselves, and any allegations inconsistent with their terms are denied. Denied that statements made by employees of AHCA are necessarily "conclusions" of the Defendant in this case. Unknown as to the precise definition of the term "HN1 Model" coined by Plaintiffs. Otherwise denied.

10. Unknown as to the precise definition of the term "HN1 Model" coined by Plaintiffs. Otherwise denied.

11. Paragraph 11 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provision cited in paragraph 11 speaks for itself, and all interpretations and characterizations inconsistent with its terms are denied. To the extent a response is required to the allegations of paragraph 11, the allegations are denied.

12. The allegations of paragraph 12 rely on the false premise that HN1

approves or denies prior authorization requests. HN1 does not approve or deny prior authorization requests. Health Network One contracts with a network of providers that have contractually agreed to provide medically necessary pediatric speech therapy services under the terms provided in their respective provider agreements with Health Network One. Unknown as to the precise definition of the term "HN1 Model" coined by Plaintiffs. Without knowledge as to the Plaintiffs' motives for bringing this lawsuit. To the extent a response is otherwise required to the allegations of paragraph 12, the allegations are denied.

## II.    JURISDICTION

13.    Admitted that the Court has jurisdiction pursuant to 28 U.S.C. § 1331. Denied that either plaintiff has experienced a deprivation of any right, privilege, or immunity guaranteed by the U.S. Constitution or federal law. Otherwise denied.

14.    Admitted that, when AHCA manages the State Medicaid program, it does so under the color of state law. However, the term "Defendant" as used in the First Amended Complaint appears to conflate actions of AHCA with those of MCOs that contract with AHCA and those of subcontractors of MCOs with which AHCA has no contractual relationship. It is unknown whether, at all relevant times, these third parties acted under color of state law, and, therefore, the allegations of paragraph 14 are denied except as specifically admitted herein.

15.    Admitted for jurisdictional purposes only. Denied that any relief is

appropriate to award to either plaintiff.

16.     Admitted for venue and jurisdictional purposes only and that the Northern District of Florida – Tallahassee Division is an appropriate venue for this action. Admitted that AHCA is headquartered in Tallahassee, Florida. Otherwise denied.

## III.     PARTIES

17.     Admitted that B.T. is enrolled in Florida's Medicaid program. Otherwise, without knowledge and therefore denied.

18.     Admitted that A.G. is enrolled in Florida's Medicaid program. Otherwise, without knowledge and therefore denied.

19.     Admitted that the Complaint purports to sue Secretary Marstiller in her official capacity as Secretary of AHCA.

20.     Unknown as to plaintiffs' definition of "directs and oversees" and therefore denied. The statutory provisions cited in paragraph 20 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied. Admitted that the Secretary is AHCA's agency head and has duties as prescribed by the Florida Legislature. Admitted that the Secretary is based, and that AHCA is headquartered, in Tallahassee, Leon County, Florida.

## IV.     FRAMEWORK OF FEDERAL MEDICAID LAW

### A.     The Medicaid Act

21.     Paragraph 21 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provisions cited in paragraph 21 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

22.     Paragraph 22 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provisions cited in paragraph 22 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

23.     Paragraph 23 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provision cited in paragraph 23 speaks for itself, and all interpretations and characterizations inconsistent with its terms are denied.

24.     Admitted that the Centers for Medicare & Medicaid Services ("CMS") is part of the agency of Health and Human Services involved in the administration of Medicaid at the federal level. Admitted that CMS publishes regulations and guidelines. The remainder of paragraph 24 contains legal assertions as opposed to allegations of fact, and, therefore, no response is required. To the extent that a response is required, any allegations contained in paragraph 24 are denied.

25.     Paragraph 25 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. To the extent that a response is

required, any allegations contained in paragraph 25 are denied.

26.     Paragraph 26 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provision and regulation cited in paragraph 26 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

27.     Paragraph 27 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provision and regulation cited in paragraph 27 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

**B.     The Medicaid Act's EPSDT Requirements**

28.     Paragraph 28 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provision and regulation cited in paragraph 28 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

29.     Paragraph 29 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provisions cited in paragraph 29 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

30.     Paragraph 30 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provision cited in

paragraph 30 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

31.     Paragraph 31 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provision cited in paragraph 31 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

32.     Paragraph 32 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provision and regulation cited in paragraph 32 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

33.     Paragraph 33 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provisions cited in paragraph 33 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

34.     Paragraph 34 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The regulatory authority cited in paragraph 34 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

35.     Paragraph 35 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The regulation cited in paragraph 35

speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

36.     Paragraph 36 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The regulatory authority cited in paragraph 36 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

37.     Paragraph 37 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The regulation cited in paragraph 37 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

38.     Paragraph 38 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provision and regulatory authority cited in paragraph 38 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

39.     Paragraph 39 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The regulatory authority cited in paragraph 39 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

**C.     Administration of State Medicaid Programs through Managed Care**

40.     Paragraph 40 contains only legal assertions as opposed to allegations of

fact, and, accordingly, no response is required. The statutory provision cited in paragraph 40 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

41.     Paragraph 41 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The regulatory authority cited in paragraph 41 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

42.     Paragraph 42 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The regulation cited in paragraph 42 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

43.     Paragraph 43 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The regulation cited in paragraph 43 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

44.     Paragraph 44 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provision, regulation, and regulatory authorities cited in paragraph 44 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

45.     Paragraph 45 contains only legal assertions as opposed to allegations of

fact, and, accordingly, no response is required. The regulation cited in paragraph 45 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

46. Paragraph 46 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The regulation cited in paragraph 46 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

47. Admitted that, in some circumstances, MCOs undertake prior authorization reviews of covered Medicaid services and pay providers for those services when approved. Denied that prior authorization reviews are always required by all MCOs.

48. Paragraph 48 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The regulation cited in paragraph 48 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

49. Paragraph 49 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provision and regulation cited in paragraph 49 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

## V. FACTS REGARDING FLORIDA'S MEDICAID PROGRAM

### A.    Florida's Statewide Medicaid Managed Care Program

50.    Admitted that Florida participates in the federal Medicaid program. The statutory provisions cited in paragraph 50 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

51.    Admitted that AHCA is designated as the single state agency authorized to make payments for medical assistance and related services under Title XIX of the Social Security Act. The statutory provision cited in paragraph 51 speaks for itself, and all interpretations and characterizations inconsistent with their terms are denied.

52.    Paragraph 52 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory provisions cited in paragraph 52 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

53.    Admitted that some Medicaid recipients are not enrolled in health plans offered by MCOs and receive services from providers who are paid on a fee-for-service basis. Otherwise, paragraph 53 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The administrative code provisions cited in paragraph 53 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

54.    Admitted that the MCOs are subject to the terms of their contracts with

AHCA, the terms of which speak for themselves. All allegations inconsistent with their terms are denied.

55. Denied.

56. The Model Contract speaks for itself. All allegations inconsistent with its terms are denied.

57. The Model Contract speaks for itself. All allegations inconsistent with its terms are denied.

58. Admitted that Sunshine and Simply are two MCOs that operate in Florida. Otherwise denied.

59. Admitted.

60. The allegations of paragraph 60 are vague as the parameters of Plaintiffs' term "managed care plan" are undefined. To the extent a response is required to the allegations of paragraph 60, the allegations are denied.

61. Denied.

62. Admitted that Sunshine administers the Children's Medical Services Plan. Otherwise denied.

63. Paragraph 63 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The statutory and administrative code provisions cited in paragraph 63 speak for themselves, and all interpretations and characterizations inconsistent with their terms are denied.

**B.** **The Different Approaches to Prior Authorization of Speech Therapy for Medicaid Enrolled Children**

      i.     Administration and prior authorization of speech therapy under the non-HN1 model

64.    The allegations of paragraph 64 are vague and incapable of a precise response. Admitted, however, that providers contract with MCOs to provide services to Medicaid recipients enrolled in the MCOs' respective Medicaid health plans. Otherwise denied.

65.    Admitted that providers that contract with MCOs to provide services to Medicaid recipients are paid for those services, presumably in accordance with the terms of their specific provider agreements. Without knowledge as to whether there is any "standard rate" for speech therapy services, and therefore, denied. Otherwise denied.

66.    The allegations of paragraph 66 rely on the false premise that all providers that provide pediatric speech therapy services to Medicaid recipients are monolithically paid in the same fee-for-service manner, such that a "non-HN1 model" exists as a valid grouping. Upon information and belief, some providers of pediatric speech therapy services are compensated on a fee-for-service basis while others may be compensated in other ways, such as an agreed-upon case rate basis. Admitted that determining the amount, duration, and scope of what speech therapy services are medically necessary—whether or not HN1 is involved—would require

a determination of medical necessity. Otherwise, to the extent a response is required to the allegations of paragraph 66, the allegations of the paragraph are denied.

67. The allegations of paragraph 67 rely on the false premise that all providers that provide pediatric speech therapy services to Medicaid recipients are monolithically paid in the same fee-for-service manner, such that a "non-HN1 model" exists as a valid grouping. Upon information and belief, some providers of pediatric speech therapy services are compensated on a fee-for-service basis while others may be compensated in other ways, such as an agreed-upon case rate basis. Admitted that determining the amount, duration, and scope of what speech therapy services are medically necessary—whether or not HN1 is involved—would require a determination of medical necessity. Otherwise, to the extent a response is required to the allegations of paragraph 67, the allegations of the paragraph are denied.

68. The allegations of paragraph 68 rely on the false premise that all providers that provide pediatric speech therapy services to Medicaid recipients are monolithically paid in the same fee-for-service manner, such that a "non-HN1 model" exists as a valid grouping. Upon information and belief, some providers of pediatric speech therapy services are compensated on a fee-for-service basis while others may be compensated in other ways, such as an agreed-upon case rate basis. Admitted that determining the amount, duration, and scope of what speech therapy services are medically necessary—whether or not HN1 is involved—would require

a determination of medical necessity. Otherwise, to the extent a response is required to the allegations of paragraph 68, the allegations of the paragraph are denied.

69. The allegations of paragraph 69 rely on the false premise that all providers that provide pediatric speech therapy services to Medicaid recipients are monolithically paid in the same fee-for-service manner, such that a "non-HN1 model" exists as a valid grouping. Upon information and belief, some providers of pediatric speech therapy services are compensated on a fee-for-service basis while others may be compensated in other ways, such as an agreed-upon case rate basis. Admitted that determining the amount, duration, and scope of what speech therapy services are medically necessary—whether or not HN1 is involved—would require a determination of medical necessity. Otherwise, to the extent a response is required to the allegations of paragraph 69, the allegations of the paragraph are denied.

70. The allegations of paragraph 70 rely on the false premise that all providers that provide pediatric speech therapy services to Medicaid recipients are monolithically paid in the same fee-for-service manner, such that a "non-HN1 model" exists as a valid grouping. Upon information and belief, some providers of pediatric speech therapy services are compensated on a fee-for-service basis while others may be compensated in other ways, such as an agreed-upon case rate basis. Admitted that determining the amount, duration, and scope of what speech therapy services are medically necessary—whether or not HN1 is involved—would require

a determination of medical necessity. Admitted that when a requested authorization is denied, the recipient should receive a notice of adverse benefit determination, with a right to administrative review of the determination. Otherwise, to the extent a response is required to the allegations of paragraph 70, the allegations of the paragraph are denied.

      ii.    <u>Administration and prior authorization under the HN1 Model for speech therapy</u>

71.    Denied. However, admitted that, upon information and belief, an entity known as HN1 operates a network of providers known as Therapy Network of Florida.

72.    Denied. However, admitted that, upon information and belief, several MCOs subcontract with Health Network One to assist in the administration of speech therapy services to Medicaid enrollees under age 21.

73.    Admitted that, upon information and belief, some children enrolled in MCOs that subcontract with Health Network One do not receive services from providers pursuant to an agreement between Health Network One and the MCO. Otherwise denied.

74.    Admitted that, upon information and belief, in accordance with Health Network One's contracts with some MCOs, HN1 reviews request for prior authorization of outpatient speech therapy for Medicaid enrollees under age 21, contracts with providers for the provision of speech therapy services, and pays

therapists for those services. Otherwise denied.

75.     The allegations of paragraph 75 rely on the false premise that all providers that provide pediatric speech therapy services to Medicaid recipients are monolithically paid in the same fee-for-service manner, such that a "non-HN1 model" exists as a valid grouping. Upon information and belief, some such providers of pediatric speech therapy services are compensated on a FFS basis while others may be compensated in other ways, such as an agreed-upon case rate basis. Otherwise, to the extent a response is required to the allegations of paragraph 75, the allegations of the paragraph are denied.

76.     Admitted that, upon information and belief, standardized test scores are one of the factors assessed by HN1 to determine a level of impairment. Otherwise denied.

77.     Unknown as to the precise definition of the term "HN1 Model" coined by Plaintiffs. Admitted that, upon information and belief, HN1 uses a model through which levels of impairment are determined on a 1-5 scale, and, at level 1, providers are paid for evaluations only, in accordance with the terms of their agreements with HN1. Otherwise denied.

78.     Denied.

79.     Denied.

80.     Denied.

81.    Denied.

82.    Denied.

83.    The allegations of paragraph 83 rely on the false premise that an HN1 "impairment level and associated case rate" may "cover less than the total amount of speech therapy prescribed by a provider." Upon information and belief, providers within HN1's network have contractually committed to providing all medically necessary services in exchange for the case rates provided in their respective agreements with HN1. Admitted that, as HN1 does not make any decisions resulting in reductions or denials of prescribed services for which authorization is sought, HN1 does not provide notices of such denials or reductions. To the extent a response to the allegations of paragraph 83 is otherwise required, the allegations of the paragraph are denied.

84.    Denied that HN1 makes any decisions resulting in reductions or denials of prescribed services for which authorization is sought, or that HN1 provides notices of such denials or reductions. Otherwise denied.

**C.    Defendant's Knowledge and Approval of the HN1 Model and its Impact on Medicaid-Enrolled Children**

85.    Denied.

86.    The document partially quoted in paragraph 86 speaks for itself. All allegations inconsistent with its terms are denied. Unknown as to the precise definition of the term "HN1 Model" coined by Plaintiffs, and denied that the

"model" referred to in the document partially quoted in paragraph 86 is identical to the term "HN1 Model" undefined in the First Amended Complaint. Otherwise denied.

87.     The document partially quoted in paragraph 87 speaks for itself. All allegations inconsistent with its terms are denied. Unknown as to the precise definition of the term "HN1 Model" coined by Plaintiffs, and denied that the "model" referred to in the document partially quoted in paragraph 87 is identical to the term "HN1 Model" undefined in the First Amended Complaint. Otherwise denied.

88.     Unknown as to the precise definition of the term "HN1 Model" coined by Plaintiffs, and without knowledge as to Plaintiffs' subjective definition of "all relevant respects." Otherwise denied.

89.     The document paraphrased in paragraph 89 speaks for itself. All allegations inconsistent with its terms are denied. Otherwise denied.

90.     The document paraphrased in paragraph speaks for itself. All allegations inconsistent with its terms are denied. Otherwise denied.

91.     The document paraphrased in paragraph 91 speaks for itself. All allegations inconsistent with its terms are denied. Otherwise denied.

92.     The document paraphrased in paragraph 92 speaks for itself. All allegations inconsistent with its terms are denied. Unknown as to the precise

definition of the term "HN1 Model" coined by Plaintiffs. Otherwise denied.

93.     The document referred to in paragraph 93 speaks for itself. All allegations inconsistent with its terms are denied. Unknown as to the precise definition of the term "HN1 Model" coined by Plaintiffs. Otherwise denied.

94.     The documents referred to in paragraph 94 speak for themselves. All allegations inconsistent with their terms are denied. Unknown as to the precise definition of the term "HN1 Model" coined by Plaintiffs. Otherwise denied.

95.     The documents referred to in paragraph 95 speak for themselves. All allegations inconsistent with their terms are denied. Unknown as to the precise definition of the term "HN1 Model" coined by Plaintiffs. Otherwise denied.

96.     The documents referred to in paragraph 96 speak for themselves. All allegations inconsistent with their terms are denied. Otherwise denied.

97.     Paragraph 97 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. The document referred to in paragraph 97 speaks for itself, and all interpretations and characterizations inconsistent with its terms are denied. Otherwise denied.

98.      Paragraph 98 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. Otherwise denied.

99.     Unknown as to the precise definition of the term "HN1 Model" coined by Plaintiffs. Admitted that AHCA is aware that Sunshine contracts with Health

Network One. Otherwise denied.

**D. FACTS AND ALLEGATIONS OF PLAINTIFFS B.T. AND A.G.**

**i. B.T.**

100. Admitted that B.T. is a Medicaid beneficiary enrolled in Sunshine Health. Otherwise without knowledge and therefore denied.

101. Without knowledge and therefore denied.

102. Without knowledge and therefore denied.

103. Without knowledge and therefore denied.

104. Without knowledge and therefore denied.

105. Without knowledge and therefore denied.

106. Without knowledge and therefore denied.

107. Admitted that TherHappy Therapy Services in Hudson, Florida currently provides speech therapy services to B.T.

108. Denied.

109. Denied that AHCA has authorized, or refused to authorize, any specific outlay of services for B.T. Otherwise denied.

110. Admitted that Sunshine contracts with Health Network One. Admitted that B.T. has been enrolled in Sunshine since 2021. Otherwise denied.

111. Paragraph 111 contains only legal assertions as opposed to allegations of fact, and, accordingly, no response is required. To the extent that a response is

required, any allegations contained in paragraph 111 are denied.

112.  Denied.

113.  Denied.

114.  Admitted.

115.  Denied.

116.  Denied.

117.  Denied.

118.  The allegations of paragraph 118 rely on the false premise that an HN1 "impairment level and associated case rate" may "cover less than the total amount of speech therapy prescribed by a provider." Upon information and belief, providers within HN1's network have contractually committed to providing all medically necessary services in exchange for the case rates provided in their respective agreements with HN1. Admitted that, as HN1 does not make any decisions resulting in reductions or denials of prescribed services for which authorization is sought, HN1 does not provide notices of such denials or reductions. Further, because there was no reduction in services determined to be medically necessary, Sunshine would also not have provided a notice of a reduction in services. To the extent a response to the allegations of paragraph 118 is otherwise required, the allegations of the paragraph are denied.

119.  Denied.

### ii. A.G.

120. Admitted that A.G. is a Medicaid beneficiary enrolled in Simply. Otherwise without knowledge and therefore denied.

121. Without knowledge and therefore denied.

122. Without knowledge and therefore denied.

123. Without knowledge and therefore denied.

124. Without knowledge and therefore denied.

125. Without knowledge and therefore denied.

126. Without knowledge and therefore denied.

127. Without knowledge and therefore denied.

128. Without knowledge and therefore denied.

129. Admitted.

130. Denied.

131. Denied.

132. Denied.

133. The allegations of paragraph 133 rely on the false premise that an HN1 "impairment level and associated case rate" may "cover less than the total amount of speech therapy prescribed by a provider." Upon information and belief, providers within HN1's network have contractually committed to providing all medically necessary services in exchange for the case rates provided in their respective

agreements with HN1. Admitted that, as HN1 does not make any decisions resulting in reductions or denials of prescribed services for which authorization is sought, HN1 does not provide notices of such denials or reductions. Further, because there was no reduction in services determined to be medically necessary, Simply would also not have provided a notice of a reduction in services. To the extent a response to the allegations of paragraph 133 is otherwise required, the allegations of the paragraph are denied.

134. Denied.

## A. CAUSES OF ACTION

### First Cause of Action: Violation of the Federal Medicaid Early and Periodic Screening, Diagnostic, and Treatment Mandate

135. AHCA's responses to paragraphs 1 through 134 of the First Amended Complaint are incorporated herein.

136. Denied.

137. Denied.

### Second Cause of Action: Violation of Federal Medicaid Act Notice and Hearing Requirements

138. AHCA's responses to paragraphs 1 through 134 of the First Amended Complaint are incorporated herein.

139. Denied.

140. Denied.

### Third Cause of Action: Violation of Constitutional Due Process

141.   AHCA's responses to paragraphs 1 through 134 of the First Amended Complaint are incorporated herein.

142.   Denied.

143.   Denied.

## First Affirmative Defense
## Failure to State a Cause of Action

The First Amended Complaint fails to state a cause of action for violations of the federal Medicaid Early and Periodic Screening, Diagnostic, and Treatment Mandate ("EPSDT"), Notice and Hearing Mandate, or the Due Process Clause. AHCA does not authorize the outlay of services to Plaintiffs. Service determinations for Plaintiffs are made through MCOs that contract with AHCA. In turn, some MCOs contract with Health Network One to assist the plans in administering pediatric speech therapy services, which includes utilizing HN1 to contract with providers (that may set forth case rates). Critically, these case rates do not dictate or "cap" the amount of pediatric speech therapy services providers contracted with HN1 can provide; rather the providers agree to provide all medically necessary therapy services required under EPSDT regardless of case rate. Thus, the use of a set case rate by HN1 does not prevent Plaintiffs from receiving speech therapy services necessary to correct or ameliorate their conditions, nor does AHCA's approval of the MCOs use of subcontractors who utilize case rates contravene its obligations under federal law. In the same vein, the use of a case rate alone does not

constitute a denial or reduction in speech therapy services because, regardless of the case rate, the provider is still obligated to provide the medically necessary speech therapy services. In short, the use of a case rate is not the equivalent of a time cap or expenditure cap.

At best, the First Amended Complaint sets forth allegations showing that the providers are in breach of, or have breached, their contractual obligations with the MCOs to provide speech therapy services to Plaintiffs. Any such breach is not a violation of the Medicaid mandates at issue or federal law otherwise. Therefore, the First Amended Complaint fails to state any cause of action against AHCA for which relief may be granted.

## Second Affirmative Defense
### Sovereign Immunity

To the extent Plaintiffs base their request for relief on an action unauthorized by law, AHCA is entitled to sovereign immunity.

## Third Affirmative Defense
### Eleventh Amendment

The Eleventh Amendment to the United States Constitution prohibits the award of retrospective relief for alleged past violations of federal law.

## Fourth Affirmative Defense
### Compliance with State and Federal Laws

AHCA is not liable to Plaintiffs to the extent that AHCA acted in compliance with federal statutes and regulations governing the provision of Medicaid services

and in accordance with its comprehensive, effectively working plan for the delivery of Medicaid services that has been reviewed and approved by CMS.

**Fifth Affirmative Defense**
**Lack of Standing**

Plaintiffs lack standing to bring this action because the First Amended Complaint fails to allege that Plaintiffs suffered an injury in fact that is causally connected to AHCA's actions and that is redressable by a favorable decision. Plaintiffs are not suffering an injury-in-fact because there are available speech therapy providers who have contracted with Plaintiffs' respective MCOs to deliver all medically necessary services. The use of a case rate in and of itself does not rise to the level of an injury-in-fact as alleged. Moreover, and in any event, to the extent Plaintiffs have suffered an injury-in-fact, the alleged injury is not causally connected to AHCA's actions nor is it redressable by a favorable decision. Instead, Plaintiffs' alleged injuries are the result of the providers breach of their obligations to the MCOs to perform all medically necessary speech therapy services in accordance with the requirements of EPSDT. A favorable decision for Plaintiffs against AHCA will not redress Plaintiffs' alleged harms. Moreover, with respect to declaratory and injunctive relief, the existence of past injury, in and of itself, is insufficient to confer standing; Plaintiffs have not alleged the threat of a real and immediate threat of future injury, and as such do not have standing to seek declaratory or injunctive relief.

## Sixth Affirmative Defense
## Ripeness

For the same reasons Plaintiffs lack standing, Plaintiffs' claims are not ripe for judicial review. Further, Plaintiffs' claims are not sufficiently mature with defined and concrete issues to permit effective decision-making by the Court at this time.

## Seventh Affirmative Defense
## Declaratory Judgment

Plaintiffs have failed to establish a basis for declaratory judgment under 28 U.S.C. § 2201 because they have not established that this action constitutes a case in actual controversy for the same reasons Plaintiffs lack standing and the case is not ripe.

## Eight Affirmative Defense
## Permanent Injunctive Relief

Plaintiffs have failed to establish a basis for permanent injunctive relief because Plaintiffs cannot show that there exists a likelihood of substantial future harm. A permanent injunction cannot be supported by a speculative, remote possibility of future harm. Moreover, to the extent that Plaintiffs seek injunctive relief over the non-party providers to provide speech therapy services, the Court lacks subject matter jurisdiction to grant such relief. As stated above, any failure to provide services is not a consequence of any action by AHCA, or any third party in privity with AHCA; rather, it is the consequence of third-party providers, having no

contractual relationship with AHCA, that are refusing to provide medically necessary speech therapy services in accordance with their contracts with HN1.

**Ninth Affirmative Defense**
**Scope of Relief**

Any relief the Court deems necessary should be limited to narrowly address the harm before it and not unnecessarily affect AHCA's otherwise comprehensive, effectively working plan for the delivery of Medicaid services that has been reviewed and approved by CMS.

**Tenth Affirmative Defense**
**Waiver, Estoppel, Acquiescence**

Plaintiffs' claims are barred by waiver, estoppel, or acquiescence to the extent that Plaintiffs rejected services, failed to properly request necessary services, failed to cooperate to obtain necessary services, or conducted themselves in any manner that prevented the delivery of the speech therapy services.

**Eleventh Affirmative Defense**
**Individualized Physician Decisions**

AHCA is not liable to Plaintiffs to the extent that services were not provided based on the reasonable, good faith, and individualized medical necessity determinations made by medical professionals using their professional judgment and reasonable discretion.

## Twelfth Affirmative Defense
### Attorneys' Fees

Plaintiffs' have not sufficiently alleged a basis to award attorneys' fees under 42 U.S.C. § 1988, and any such award would be unjust. Both prior to and since the filing of this action, AHCA has voluntarily sought to improve the delivery of EPSDT services, and to ensure that the health plans are performing their obligations under federal law.

## RESERVATION OF RIGHTS

AHCA is without sufficient knowledge at this time to determine whether AHCA has additional defenses. AHCA reserves the right to amend its answer to add, remove, or modify its defenses as the litigation develops.

WHEREFORE, Defendant, Simone Marstiller, in her official capacity as Secretary for the Florida Agency for Health Care Administration, requests that the Court enter judgment in favor of Defendant and against Plaintiffs, award Defendant its reasonable attorneys' fees and costs, and such further relief as the Court deems appropriate.

DATED this 20th day of July 2022.

/s/ *Erik M. Figlio*
ERIK M. FIGLIO
Florida Bar No.: 745251
ALEXANDRA E. AKRE
Fla Bar. No. 125179
Ausley McMullen

Post Office Box 391
123 South Calhoun Street
Tallahassee, Florida 32302
(850) 224-9115
rfiglio@ausley.com
aakre @ausley.com

ATTORNEYS FOR DEFENDANT
SIMONE MARSTILLER, in her
official capacity as Secretary for the
FLORIDA AGENCY FOR HEALTH
CARE ADMINISTRATION,

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing has been filed and furnished electronically to counsel of record through the CM/ECF System on this 20th day of July, 2022.

/s/ *Erik M. Figlio*
ERIK M. FIGLIO