UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

B.T., et al.,

        Plaintiff,

v.                                        Case No. 4:22-cv-212-MW-MJF

Simone Marstiller, in her official capacity
as Secretary for the AGENCY FOR
HEALTH CARE ADMINISTRATION,
        Defendant.
_____/

**PLAINTIFFS' RESPONSE TO SIMPLY HEALTHCARE PLANS, INC.'S
MOTION TO INTERVENE**

Pursuant to Federal Rule of Civil Procedure 24 ("Rule 24") and N.D. Local Rule 7.1, Plaintiffs B.T. and A.G., file this response in opposition to the motion to intervene filed by Simply Healthcare Plans, Inc. (Simply) (Doc. 41).

**I.    INTRODUCTION**

Simply's motion to intervene fails to meet the elements of intervention as a matter of right under Fed. R. Civ. P. 24(a)(2). It is untimely, having been filed four months after Simply learned of its interests. Simply's delay will prejudice Plaintiffs, who are ready to conclude the limited discovery remaining and file for summary judgment. At the same time, it poses no prejudice to Simply whose interests are, and in fact, must be aligned with Defendant, the single state Medicaid agency charged with the sole authority over Florida's Medicaid program. And,

1

while Simply cannot take a position contrary to that of Defendant in this litigation, as a practical matter, Defendant's actions demonstrate they have more than adequately represented the interests of Simply whose goals in this litigation are identical to that of Defendant.

## II. SIMPLY'S INTERVENTION AS A MATTER OF RIGHT

### A. Simply's Motion Is Not Timely

1. <u>Simply knew or should have known of their interest in this case well before they filed their motion.</u>

Whether a motion to intervene is timely filed "is a threshold factor that must be satisfied before the other factors should be considered" and, while the other factors are reviewed *de novo*, timeliness is reviewed only for abuse of discretion. *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, FL*, 254 Fed. Appx. 769, 771 (11th Cir. 2007).

Timeliness is measured not at the moment a movant learns of the pendency of the litigation, but instead when "the would-be intervenor actually know[s] or reasonably should have known of his interest in the case before he petitioned for leave to intervene." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1973). Once a potential intervenor has acquired such knowledge, however, "the tempo of the court accelerates. The applicant must then act reasonably promptly." *Banco Popular v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992) (citations omitted).

There are multiple points in time Simply should have known of their interest in the litigation. Simply had knowledge of Plaintiffs' First Amended Complaint, at least, a month after its filing on June 16, 2022. On June 22, 2022, counsel for AHCA represented to the Court that, to properly respond to Plaintiffs' Amended Complaint, it would need to investigate the Complaint's allegations including collecting information from the managed care plans named in the Complaint. (Doc. 15 at 2). During the 26(f) conference on July 8, 2022, counsel for AHCA represented that they were working with Simply to ensure Plaintiff B.T. received all medically necessary therapy services.

Furthermore, beginning in, at least, early August 2022, Defendant requested the entry of a protective order to, in part, protect the proprietary interests of Simply. On August 23, 2022, during a phone conversation about discovery, counsel for Defendant represented that they were awaiting a response from Simply and Sunshine about whether the protective order adequately protected the information they believed to be confidential in the case. Counsel for Plaintiff then memorialized this conversation via email. Beginning on September 8, 2022, counsel for AHCA began to copy counsel for Simply (and Sunshine) on emails to Plaintiffs' counsel regarding Plaintiffs' access to therapy services.

In its Motion, Simply does not state when it learned of this litigation or when they learned of their alleged interest, nor does it give a reason for the delay in

3

filing its motion to intervene. (Doc. 41 at 4-5). Instead, it simply concludes that, because other courts have found timely a motion to intervene filed five months after the initiation of litigation, then their motion must be found timely too. (*Id.*). This not the correct test for timeliness under Fed. R. Civ. P. 24(a).

The correct test, as stated above, analyzes whether the intervenor delayed in filing their motion once they learned of their interest in the litigation. *Stallworth*, 558 F.2d at 264. Once learned, the period in which their motion is considered timely filed shortens. *Banco Popular*, 964 F.2d at 1231. Based on the date communications between Simply and AHCA began in this case, the fact that Simply participated in drafting the protective order filed with this Court, and that, as stated in their Motion, all their purported interests arise from allegations set forth in Plaintiffs' First Amended Complaint (Doc. 41 at 2-3), Simply waited four months (and potentially longer) after learning of their interests to file a motion to intervene.

A four-month lapse between the time an intervenor discovers an interest and files a motion to intervene is not timely. *See F.T.C. v. American Legal Distributors, Inc.*, 890 F.2d 363, 365 (finding a motion to intervene untimely where it was not filed "until two months after the date on which they alleged they first could have done so."); *Brown ex rel. O'Neil v. Bush*, 194 Fed. Appx. 879, 882 (11th Cir. 2006) (holding that "seven weeks is not too short of a time for an

interested party to file a motion to intervene."); *compare Stallworth*, 568 F.2d at 267 (finding that "by filing their motion less than one month after learning of their interest…[the intervenors] discharged their duty to act quickly.").

    2. <u>Plaintiffs will be prejudiced if this motion is granted.</u>

The second factor in determining whether a motion to intervene is timely evaluates "the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest." *Hollywood Cmty. Synagogue, Inc.*, 254 Fed. Appx. at 771.

Contrary to Simply's assertions, prejudice to Plaintiffs has already occurred. Counsel for Plaintiffs requested a routine extension to respond to this Motion which was due on November 29, 2022, the day that mediation was scheduled in this matter. (Doc. 43). Neither Simply nor Defendant were willing to consent to the request unless: (1) Plaintiffs allowed Simply, a non-party, to question deponents while its motion to intervene was still pending, or (2) Plaintiffs agreed to move dates of previously set depositions to the last two weeks in the discovery period.[1] Therefore, Simply's representation that it "does not seek to delay discovery or other proceedings…[and] [a]ccordingly, there is no risk of prejudice to the existing

---

[1] Inexplicably, Simply did not express any interest in participating in mediation scheduled during this same time period where their alleged interests would be directly addressed and potentially resolved without their presence.

parties in the case due to the timing of the motion" is not accurate. (Doc. 41 at 4-5).

If allowed to intervene, Simply could move to extend the discovery deadline and conduct its own discovery. (*See* Doc. 44). The parties have long agreed that this matter, if not settled, will likely be resolved on summary judgment. (Doc. 19, ¶4(e)). As such, it is reasonable to assume Simply would also file its own dispositive motions, including a motion for summary judgment.

Simply's goal on summary judgment would be the same as Defendant's; their shared goal is to prove that their subcontractor's administration of speech and other pediatric therapies conform with EPSDT.[2] As a result, intervention would allow Defendant and the intervenors to make duplicative arguments within multiple motions rather than being confined to a single motion for summary judgment where Defendant is free to and capable of raising all defenses regarding the EPSDT violation that Plaintiffs allege. Having to expend additional attorney time to respond to multiple motions that all raise essentially identical arguments to achieve the same goal would significantly prejudice Plaintiffs. This would also interfere with the preservation of judicial economy. *See Stallworth*, 558 F.2d at 265

---

[2] In its motion to intervene, Simply states that it "has a direct and substantial interest is in showing that it did not violate A.G.'s due process rights and that its private contract with HN1 does not trigger a violation of the federal Medicaid Act or the Fourteenth Amendment to the United States Constitution." (Doc. 41 at 6).

(finding that a primary purpose of Rule 24 is to "foster economy of judicial administration.").

### 3. Simply will not be prejudiced if the motion is granted because their interests are adequately represented by Defendant

The third factor to be weighed in evaluating the timeliness of a motion to intervene is "the extent of the prejudice to the would-be intervenor if his petition is denied." *Hollywood Cmty. Synagogue, Inc.*, 254 Fed. Appx. at 771. Here, prejudice to Simply would be minimal, if non-existent.

Defendant is the single state Medicaid agency. As discussed in more detail *infra*, by law, Simply stands in the shoes of Defendant in this matter. The issue in this case is whether the Medicaid program is compliant with the Medicaid Act's EPSDT and due process provisions. AHCA, as the single state agency has ultimate responsibility for ensuring that the state complies with federal law, including whether the entities with which it contracts complies. *Wilson v. Gordon*, 822 F.3d 934, 953 (6th Cir. 2016) ("[S]tates remain ultimately responsible for ensuring their Medicaid programs comply with federal law."). Therefore, the interests of Simply and AHCA are identical for the purpose of this case.

Moreover, as Florida's single state Medicaid agency, Defendant (and only Defendant) is vested with the "final authority to make the many complex decisions governing a state's Medicaid program…." *K.C. ex rel. Africa H. v. Shipman*, 716 F.3d 107, 112 (4th Cir. 2013). As such, Simply could not take a position in this

7

proceeding counter to Defendant and, thus, Simply would suffer no, or at best, minimal prejudice if its motion to intervene is denied.

Second, Defendant and Simply have communicated throughout the pendency of this litigation. As stated above, Defendant copies Simply's counsel on email communications to Plaintiffs' counsel about this case. Defendant also insisted that counsel for Simply be present at Plaintiffs' depositions of AHCA witnesses. Any questions of fact Defendant may have about a subcontract AHCA is required to approve[3] or a utilization management model AHCA is required to oversee[4] can be resolved by Defendant and Simply freely sharing that information as they have done throughout this case and as is required by Defendant in its contracts with Medicaid managed care plans.[5]

---

[3] *See* AHCA Statewide Medicaid Managed Care Model Contract (hereafter, "SMMC Model Contract") at Attachment II (Core Provisions) Section X(C)(1)(a) (last updated 07/01/2022) at p. 138 accessible at: https://ahca.myflorida.com/medicaid/statewide_mc/pdf/Contracts/2022-02-01/Attachment_II-Core_Contract_Provisions11-4-22.pdf (stating that "[t]he Managed Care Plan shall submit all subcontracts for Agency review at least ninety (90) days before the proposed effective date of the subcontract or change.").

[4] *See* 42 C.F.R. §438.210(b).

[5] *See* SMMC Model Contract at Attachment II, Section X(C)(3)(b) at p. 142 (summarizing the obligation of subcontractors to fully cooperate with Defendant regarding their right to access records "pertaining to any aspect of services and activities performed" as well as any records related to Medicaid enrollees…").

Finally, to the extent that this litigation results in the interruption of contracts between Simply and HN1[6] (neither who are party to this case), those disputes can be addressed in state court litigation. Where there is the availability of another forum to litigate legal issues that may arise from the litigation in which the movant seeks to intervene, prejudice to the intervenor is minimal. *See Hollywood Cmty. Synagogue, Inc.*, 254 Fed. Appx. at 771 (finding no abuse of discretion where the district court determined that prejudice to the intervenors "would be minimal as they could litigate the constitutionality of the consent decree in another forum."); *see also Mana-Sota88 v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990) (finding that "a potential stare decisis effect does not automatically supply the practical disadvantage warranting intervention.").

### B. Simply Does Not Possess a Direct and Substantial Interest in this Matter

Under Rule 24, "to have a necessary interest, a 'putative intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding." *Burke v. Ocwen Fin. Corp.*, 833 Fed. Appx. 288, 292 (11th Cir. 2020) (quoting *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996)). Additionally, "[t]he interest must be more than purely economic and cannot be

---

[6] Oddly, in its Motion to Intervene, HN1 did not express any concern about the interruption of its contract with Simply or others MCOs. It only alleged that it would interrupt its contracts with therapy providers. (*See generally* Doc. 40).

9

speculative." *Burke* at 292 (citing *Mt. Hawley Ins. Co., v. Sandy Lake Properties, Inc.*, 425 F.2d 1308, 1311 (11th Cir. 2005)). Finally, like the prejudice analysis undertaken in evaluating the timeliness of intervention, "the ability to separately litigate [a purported interest] defeats the impairment element" of Rule 24. *Burke* at 292. (citations omitted).

In *A.H.R. v. Washington State Health Care Authority*, the single state Medicaid agency moved to join, under Fed. R. Civ. P. 19(a), several Medicaid managed care organizations (MCOs) to a case where disabled child Medicaid recipients alleged that the state failed to arrange for private duty nursing services in violation of EPSDT. 469 F.Supp.3d 1018, 1033 (W.D. Wa. 2016). Under Rule 19, the court was charged with determining whether the person (or entity) being proposed to join the litigation had "an interest in the action and resolving the action in the person's [or entity's] absence may as a practical matter impair or impede the person's ability to protect that interest."[7] *Id.* at 1035. The court found that "administrative, operational, and financial interests" which arose from contracts between the MCOs and Washington's Medicaid agency were merely financial and did not constitute a "legally protected interest." *Id.* at 1035-36.

---

[7] While the Eleventh Circuit has not interpreted the requirements of Rule 19 and Rule 24 the same, case law suggests that establishing a legally protected interest under Rule 19 may require a less stringent showing than that required by Rule 24. *See Davis v. BancInsure, Inc.*, No. 3:12–cv–113–TCB, 2013 WL 1226491 *7 (N.D. Ga., March 18, 2013). As such, if proposed necessary parties (like the MCOs sought to be joined in *A.H.R.*) do not meet the interest test under Rule 19, then they are unlikely to meet it under Rule 24. *Davis* at *7.

The court further found that the contractual relationship between the MCOs and the state Medicaid agency itself was not a legally protected interest. *Id.* at 1035-36. The court reasoned that the plaintiff Medicaid recipients' suit did "not represent 'an attack' on the agreements…Plaintiffs assert only claims for statutory violations against [the single state agency]." *Id.* at 1036. The court further stated that "[a]lthough Plaintiffs' suit may tangentially relate to…[the Medicaid agency's] contracts with the MCOs, it does not represent an attack on those contracts or seek to set them aside." *Id.*

Here, Simply is not "a real party in interest in the transaction which is the subject of the proceeding." *Burke*, 833 Fed. Appx. at 292. Simply contracts with Defendant but does not allege in its motion, nor could it, that its contract with Defendant will be impacted by any judgment in this case. The contract between Simply and HN1 – the interest Simply focuses on in its intervention motion – is a subcontract under Defendant. However, as in *A.H.R.*, any "effect on…[Simply's] operations and bottom lines" that Simply asserts in its contract with HN1 is merely financial and therefore does not rise to a legally protected interest. 469 F.Supp.3d 1035-36; *see also Burke*, 833 Fed. Appx. at 292.

Furthermore, the contractual relationship between the MCOs and HN1 itself is not a legally protected interest. This is because, like in *A.H.R.*, Plaintiffs only seek to have their federal Medicaid rights upheld. *Id.* at 36. Their prayer for relief

11

does not request that any contracts be set aside.[8] (Doc. 10). Plaintiffs instead seek a declaration that because the HN1 Model caps the amount of speech therapy a child Medicaid recipient can receive and does not provide adequate written notice when doing so, the Model violates the federal Medicaid Act's EPSDT and due process provisions. (*Id.*). If contracts between Simply and HN1 are impacted by a judgment in this matter (which is speculative), that affect is tangentially related to the enforcement of Plaintiffs' statutory rights. *Burke*, 833 Fed. Appx. at 292; *A.H.R.*, 469 F.Supp.3d at 1036.[9] Therefore, Simply does not satisfy the "legally protected interest" test under Rule 24.

### C. Simply's Participation is Unnecessary because Its Interest is Adequately Represented by Defendant as Simply Cannot Assert an Interest that Diverges from Defendant.

As stated above, Simply's purported interest is adequately represented in this litigation. First, the question at issue is whether Florida's Medicaid program's administration of pediatric therapies complies with the Medicaid Act's EPSDT and

---

[8] As evidence that Plaintiffs do not attack or seek to set aside Simply's contracts with HN1, they suggest two potential examples of resolutions that would avoid such outcome. First, Defendant could develop and implement an exceptions process that gives Medicaid enrolled children the ability to request being carved out of the HN1 Model because their therapy needs exceed the budget assigned by the Model. Similarly, Defendant could develop and publish a written protocol detailing how child Medicaid recipients can request that a Florida Medicaid managed care plan establish a single case agreement when recipients are unable to locate a therapist who can provide them all medically necessary care within the budget prescribed by the HN1 Model. Neither of these solutions would significantly affect the terms of Simply's contracts with HN1.

[9] Additionally, as stated above, if contracts between Simply and HN1, who are not parties, are impacted, Simply (and HN1) have recourse in state court which similarly defeats the element of "interest." *Burke*, 833 Fed. Appx. at 292.

due process provisions. Defendant is ultimately responsible for ensuring compliance with Medicaid requirements. *Wilson*, 822 F.3d at 953. In turn, Simply is bound by the directives of Defendant as Secretary of Florida's single state agency for the Medicaid program. *See* 42 U.S.C. §1396a(a)(5). Implementing the "single state agency" requirement is 42 C.F.R. §431.10(e)(3) which states:

> "If any other State or local agencies or offices perform services for the Medicaid agency, they must *not* have the authority to change or disapprove any administrative decision of that agency, or otherwise substitute their judgment for that of the Medicaid agency with respect to the application of policies, rules, and regulations issued by the Medicaid agency." (Emphasis added).

The purpose of "the single state agency requirement reflects two important values: an efficiency rationale and an accountability rationale." *K.C. ex. rel. Africa H. v. Shipman,* 716 F.3d 107, 112 (4th Cir. 2013). The first value – efficiency – "avoids the disarray that would result if multiple state or even local entities were free to render conflicting determinations about the rights and obligations of beneficiaries and providers." *Id.* The second value – accountability – "safeguards against the possibility that a state might seek to evade federal Medicaid requirements by passing the buck to other agencies that take a less generous view of a particular obligation." *Id.* This principle applies in the context of litigation decisions. In *K.C.,* the Fourth Circuit held that an MCO cannot appeal a preliminary injunction order if the state agency chooses not to. *Id.* at 111-112. *Cf.*

13

*Weisner v. Washtenaw Cnty.,* -- N.W.2d --, 2022 WL 495102 (Mich. Ct. App. 2022) (holding MCO may not appeal final state administrative hearing decision favorable to Medicaid beneficiary).

Here, intervention (which allows individuals with interests that compete with those of the existing parties to participate in litigation) is in tension with the single state agency requirement. Allowing Simply to intervene and take a course of action distinct from that of Defendant would run counter to the rationale of the single state agency regulation as articulated in *K.C.* 716 F. 3d at 112. Simply would be able to push legal and factual arguments about the rights of Medicaid recipients that conflict with Defendant's position. *Id.* It would also offer Defendant a platform to disown the actions of entities for which Defendant is solely responsible based on the financial interests of those entities rather than the interests of Florida Medicaid recipients.[10] *Id.* at 112-13.

Additionally, Simply has asserted the same goal as Defendant in this litigation (Doc. 41 at 6) and, as set forth in detail above, has worked closely with Defendant to achieve that goal. This cooperation included Defendant seeking a protective order on Simply's behalf, advocating for Simply's participation in discovery even

---

[10] For this same reason, Simply being allowed to intervene could significantly interfere with Defendant's attempts to settle this matter in a manner that recognizes and reflects its obligations toward Medicaid recipients, as opposed to interests, like Simply's, that may run counter to those obligations.

14

prior to their filing of a motion to intervene, and copying them on case correspondence between plaintiff and defense counsel. The Court can therefore presume Defendant adequately represents Simply's interests. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1215 (11th Cir. 1989) (citing *Athens Lumber Co., Inc. v. Federal Election Com'n*, 690 F.2d 1364, 1366 (11th Cir. 1982).

In summary, Simply fails to meet the elements of intervention as a matter of right and its motion under Rule 24(a)(2) should be denied.

## II. SIMPLY'S REQUEST FOR PERMISSIVE INTERVENTION

As shown above, Simply is also not entitled to permissive intervention. Permissive intervention is "wholly discretionary" and can be denied "even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied…." *Purcell*, 85 F.3d at 1513 (citing *Worlds v. Dep't of Health and Rehab. Svces., State of Fla.*, 929 F.2d 591, 595 (11th Cir. 1991)).

First, Simply did not file their motion timely. Second, Simply cannot, based on federal Medicaid law, assert a legal defense contrary to that of Defendant, the single state Medicaid agency. Finally, Simply's primary argument for the Court to exercise its discretion in favor of intervention is that Simply "does not intend to request any extension of the current deadlines or discovery…" (Doc. 41 at 9). This representation is no longer accurate, however, as Simply has already sought to interfere with discovery even prior to being given leave to intervene by demanding

15

that, to receive an extension of time to respond to this motion, Plaintiffs either stall the scheduled dates for deposition or allow Simply to participate, as non-parties, in those depositions. As such, Simply's motion for permissive intervention should not be granted.

WHEREFORE, Plaintiffs respectfully request this Court deny Simply's Motion to Intervene.

Respectfully submitted this 15th day of December 2022.

*/s/ Katy DeBriere*
Katherine DeBriere

## REQUEST FOR ORAL ARGUMENT

Pursuant to N.D. Loc. R. 7.1(K), because there are factual matters related to when Simply learned of its interest in this litigation that counsel for Simply may best be able to answer, Plaintiffs request oral argument if probing those matters is beneficial to the Court's ultimate determination of Simply's motion.

## CERTIFICATE OF WORD COUNT

Pursuant to N.D. Loc. R.7.1(F), undersigned counsel certifies that, according to Microsoft Word, the word-processing system used to prepare this Motion and Memorandum, there are 3,756 total words contained within this Response.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of December 2022, I

16

electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                     */s/ Katy DeBriere*
                                     Katherine DeBriere
                                     Fla. Bar No.: 58506
                                     **Florida Health Justice Project**
                                     3900 Richmond Street
                                     Jacksonville, FL, 32205
                                     Telephone: (352) 278-6059
                                     debriere@floridahealthjustice.org